UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY I.,

                              Plaintiff,

v.                                                                    1:23-CV-0796
                                                                      (ML)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                              Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

ANTHONY I.
   *Pro se* Plaintiff
P.O. BOX 58
Altamont, New York 12009


SOCIAL SECURITY ADMINISTRATION                FERGUS KAISER, ESQ.
   Counsel for the Defendant                                Special A.U.S.A.
6401 Security Boulevard
Baltimore, Maryland 21235

MIROSLAV LOVRIC, United States Magistrate Judge

## **<u>ORDER</u>**

        Currently pending before the Court in this action, in which Plaintiff seeks judicial review

of an adverse administrative determination by the Commissioner of Social Security, pursuant to

42 U.S.C. §§ 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was

heard in connection with those motions on September 5, 2024, during a telephone conference

_____

[1]        This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c),
has been treated in accordance with the procedures set forth in General Order No. 18.  Under
that General Order once issue has been joined, an action such as this is considered procedurally,
as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the
Federal Rules of Civil Procedure.

conducted on the record.  At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1)      Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED.

2)      Defendant's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED.

3)      The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

4)      Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

5)      The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.

Dated: September 9, 2024
          Binghamton, New York

_Miroslav Lovric_

Miroslav Lovric
United States Magistrate Judge
Northern District of New York

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ANTHONY I.,

                                    Plaintiff,

-v-                                 1:23-CV-796

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
-----------------------------------------------------x
```

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE MIROSLAV LOVRIC**
September 5, 2024
15 Henry Street, Binghamton, NY 13901


For the Plaintiff:

    BY:  **ANTHONY I., pro se**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY:  **FERGUS J. KAISER, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

 1            (The Court and all parties present by telephone.

 2    Time noted:  9:39 a.m.)

 3            THE COURT:  All right.  So the Court will begin its

 4    decision as follows:  Plaintiff has commenced this proceeding

 5    pursuant to 42, U.S. Code, Section 405(g) to challenge the

 6    adverse determination by the Commissioner of Social Security

 7    finding that he was not disabled at the relevant times and

 8    therefore ineligible for the benefits that he sought.

 9            By way background, the Court states as follows:

10    Plaintiff was born in 1958.  He is currently 66 years old.  He

11    seeks disability insurance benefits for the period between

12    December 31, 2002, and his date last insured of December 31,

13    2007.  On his date last insured, plaintiff was approximately

14    49 years old.  Plaintiff stands approximately 5'11" and weighs

15    approximately 210 pounds.

16            Plaintiff is a high school graduate who subsequently

17    attended college.  He testified that he left college prior to

18    graduation in order to open a restaurant with his brother.  He

19    worked as a restaurant owner and head chef for approximately

20    24 years.  Plaintiff testified that he sold his restaurants in

21    2002 when his impairments, including neck, shoulder, back, and

22    knee pain, made it difficult to meet the physical demands of the

23    profession.  Plaintiff has not held full-time employment since

24    2002.

25            Procedurally, the Court notes as follows:  Plaintiff

1  applied for Title II benefits on July 15, 2020, alleging an

2  onset date of December 31, 2002.  In his application for

3  benefits, plaintiff claimed disability due to degenerative disc

4  disease and panic disorder.  During the administrative process,

5  plaintiff also reported functional limitations imposed by right

6  shoulder pain and instability in the right knee despite

7  surgeries to address these issues.

8          Administrative Law Judge Mary Sparks convened a

9  telephonic hearing on October 13, 2021, to address plaintiff's

10  application for benefits, but she adjourned it without taking

11  testimony in light of newly received medical evidence.

12  Plaintiff's application was reassigned to ALJ Jude Mulvey, who

13  held a telephonic hearing on February 9, 2022, at which

14  plaintiff and vocational expert Warren Maxim testified.  ALJ

15  Mulvey issued an unfavorable decision on February 18, 2022.

16  That decision became the final determination of the agency on

17  April 26, 2023, when the Appeals Council denied plaintiff's

18  request for review.  This action was commenced on June 30, 2023,

19  and it is timely.

20          In his February 18, 2022, decision, ALJ Mulvey

21  applied the familiar sequential test for determining disability.

22  At step one, the ALJ concluded that plaintiff had not engaged in

23  substantial gainful activity during the relevant period between

24  his alleged onset date of December 31, 2002, through his date

25  last insured of December 31, 2007.

4

1          At step two, ALJ Mulvey concluded that plaintiff had

2     the following severe impairments:  Postsurgical right knee

3     disorder, degenerative disc disease and facet disease of the

4     cervical spine, right rotator cuff tear with surgery, and left

5     biceps tendonitis.

6          At step three, ALJ Mulvey concluded that plaintiff

7     did not have an impairment or combination of impairments that

8     met or medically equaled the severity of one of the listed

9     impairments in 20 C.F.R. Section 416.920(c) during the relevant

10    period in consideration.  In making this determination, the ALJ

11    considered the following listings:  Listing 1.15 dealing with

12    disorders of the skeletal spine resulting in compromised nerve

13    root; also, listing 1.17 dealing with reconstructive surgery or

14    surgical arthrodesis of a major weightbearing joint.

15         Next, the ALJ determined that plaintiff has the

16    residual functional capacity, also known as RFC, to perform less

17    than the full range of light work.  Specifically, the ALJ found

18    plaintiff cannot climb ladders, ropes, or scaffolds, or work

19    with moving mechanical parts of equipment.  The ALJ found that

20    plaintiff can occasionally climb stairs, stoop, crouch, crawl,

21    and kneel, and that he can frequently reach with his left upper

22    extremity, and the plaintiff should also avoid concentrated

23    exposure to vibrations.

24         At step four, the ALJ relied on the vocational expert

25    testimony to determine that plaintiff was able to perform his

1    past relevant work as a restaurant manager.

2              Continuing to rely on the vocational expert

3    testimony, the ALJ made alternative findings at step five that,

4    in light of plaintiff's age, education, work experience, and

5    RFC, that there are jobs that exist in significant numbers in

6    the national economy that plaintiff could have performed during

7    the relevant period.  More specifically, the vocational expert

8    testified that plaintiff could have performed the requirements

9    of representative occupations such as order clerk, document

10   preparer, and surveillance system monitor.  Accordingly, the ALJ

11   found that plaintiff was not disabled during the relevant period

12   between December 31, 2002, through December 31st of 2007.

13             I now turn to plaintiff's arguments in plaintiff's

14   filings.  Plaintiff was represented by counsel during the

15   administrative hearing and appeal process, but plaintiff

16   commenced this proceeding pro sé.  He filed a brief and also a

17   reply brief in this proceeding, and plaintiff makes the

18   following arguments and contentions:  First, plaintiff argues

19   the ALJ's RFC determination ignored significant relevant medical

20   evidence; second, plaintiff argues the ALJ erred by relying on

21   state agency medical consultants without proof that the

22   consultants had reviewed the full medical record; third,

23   plaintiff argues the ALJ erred by finding that plaintiff's

24   description of his symptoms was inconsistent with the medical

25   evidence; and fourth, the plaintiff argues that the ALJ erred in

1  discussing plaintiff's dyspnea and chest pain when plaintiff did

2  not claim that these conditions were disabling during the

3  relevant period.

4          Recognizing the Second Circuit's mandate that pro sé

5  litigants should be granted "special solicitude" by the Court,

6  this Court will address each of these contentions while

7  undertaking a more general review of the ALJ's sequential

8  evaluation to determine whether the ALJ's decision was supported

9  by substantial evidence.

10          That being said, this Court's functional role in this

11  case is limited and extremely deferential.  This Court must

12  determine whether correct legal principles were applied and

13  whether the determination is supported by substantial evidence,

14  defined as such relevant evidence as a reasonable mind would

15  find sufficient to support a conclusion.  As the Second Circuit

16  noted in the case of *Brault v. Social Security Administration*

17  *Commissioner*, that's found at 683 F.3d 443, a 2012 Second

18  Circuit case, therein, the Second Circuit stated that this

19  standard is demanding, more so than the clearly erroneous

20  standard.  The Court noted in *Brault* that once there's a finding

21  of fact, that fact can be rejected only if a reasonable

22  factfinder would have to conclude otherwise.

23          The Court now begins its analysis in this case,

24  beginning with the step two determination made by the ALJ.  In

25  considering plaintiff's claim for benefits, the ALJ found

1    post-surgical right knee disorder, degenerative disc disease and

2    facet disease of the cervical spine, right rotator cuff tear

3    with surgery, and left biceps tendonitis were severe impairments

4    because they imposed more than a minimal harmful effect on

5    plaintiff's ability to do basic work activities.  The ALJ also

6    considered other impairments referenced in the broader medical

7    record, including bilateral carpal tunnel syndrome; lumbar

8    disorder; lateral epicondylitis, also known as tennis elbow;

9    dyspnea, also known as shortness of breath; and lung scarring,

10   but found that they did not rise to the level of severe

11   impairments.

12           In reaching this step two determination, the ALJ

13   considered physician-reviewed X-rays and other imaging reports,

14   consistent physician recommendations for conservative therapy

15   approaches, such as physical therapy, and the lack of any

16   surgery or ongoing treatment during the relevant period.

17           Specifically, with regard to dyspnea and chest pain,

18   the ALJ considered evidence from the relevant period that

19   included an exercise stress test that showed "excellent exercise

20   tolerance" and abnormal electrocardiogram findings.

21           This Court finds that the ALJ's analysis at step two

22   provides sufficient explanation indicating that he adequately

23   considered the evidence related to plaintiff's alleged

24   impairments.  Therefore, the ALJ had substantial evidence to

25   support his conclusions at step two.

1          In the alternative, the Court finds that any error by

2     the ALJ at step two, such as failing to identify a severe

3     impairment, would be harmless because he found other impairments

4     severe.  Also, the ALJ continued with the sequential evaluation,

5     and the ALJ provided adequate explanation in his decision

6     showing he properly considered the evidence related to all of

7     plaintiff's impairments.

8          In his brief, plaintiff contends that the ALJ abused

9     his discretion by discussing plaintiff's dyspnea and chest pain

10    at step two and in the RFC determination, when plaintiff never

11    based his disability claim on these conditions.  The plaintiff

12    further contends that the ALJ's citation to results from a

13    June 2000 stress test and "normal" electrocardiogram findings

14    was misleading, because these conditions eventually led to

15    plaintiff suffering a transient ischemic attack, also known as a

16    mini stroke, in 2009 and require continual treatment by a

17    cardiologist.  Plaintiff's brief suggests that he would have

18    offered additional information regarding the current status of

19    these conditions if he had known the ALJ would consider them.

20         This Court finds no error in the ALJ's consideration

21    of plaintiff's dyspnea and chest pain.  The ALJ was legally

22    required to consider the combined effect of all of plaintiff's

23    impairments on his disability status, regardless of whether a

24    specific impairment qualified as severe or nonsevere.  For that

25    proposition, see 20 C.F.R. Section 404.1523(c).  See also case

1   of *Wood v. Colvin*, 987 F. Supp. 2d at 180 and at page 198.  That

2   is a Northern District of New York 2013 case.  And therein, the

3   Court found the ALJ properly considered the combined effect of

4   all of plaintiff's impairments, including his nonsevere

5   impairments, at every step of the disability evaluation process.

6   At the same time, the ALJ's inquiry was limited to the

7   functional limitations imposed by plaintiff's impairments for

8   the period between December 31, 2002, through his date last

9   insured of December 31, 2007.  Evidence that showed a worsening

10   of plaintiff's condition after the date last insured is not

11   relevant to that inquiry, see case of *Vilardi v. Astrue*, at 447

12   F. App'x 271 at page 272, and that is a Second Circuit 2012

13   case, holding that the claimant's reliance on evidence

14   demonstrating a worsening of her condition after the date on

15   which she was last insured was of "little value" to counter the

16   substantial evidence the ALJ relied on to determine that she

17   retained the RFC to perform her past relevant work.

18   Accordingly, the ALJ's step two determination does not present

19   any grounds for remand in this case.

20         The Court will now turn to the step three analysis by

21   the ALJ.  To meet a listing, plaintiff must show that his

22   medically determinable impairment satisfies all of the specified

23   criteria in a listing.  In this case, the ALJ considered the

24   available treatment record, as well as plaintiff's testimony, to

25   conclude that plaintiff did not have an impairment or

1  combination of impairments that meets or medically equals the

2  severity of any listed impairment.

3          Plaintiff has not raised any issue with the ALJ's

4  step three determination, and this Court's review of the ALJ's

5  decision finds no grounds for remand.  The ALJ's analysis at

6  step three indicates sufficient consideration of plaintiff's

7  impairments in relation to the listings, and the findings are

8  supported by substantial evidence.

9          The Court will now turn to the RFC analysis conducted

10  by the ALJ.  RFC is defined as what an individual can still do

11  despite his or her limitations.  In other words, RFC is the

12  individual's maximum remaining ability to do sustained work

13  activities in an ordinary work setting on a regular and

14  continuing basis.  In reaching the RFC determination, the ALJ is

15  entitled to weigh all the evidence available to reach a

16  conclusion that is consistent with the record as a whole.  That

17  conclusion need not perfectly correspond to any medical opinion

18  in the record.

19          In this case, the ALJ found that plaintiff was

20  capable of performing less than the full range of light work

21  during the relevant period.

22          Given the remote period under review, the record does

23  not contain much useful opinion evidence.  Two state agency

24  consultants who reviewed the record found insufficient evidence

25  to assess plaintiff's functional limitations.  The ALJ noted

1   their reviews, but did not rely upon them.  Instead, the ALJ

2   relied on primary care and emergency room records to establish

3   that plaintiff had a limited and conservative treatment history

4   during the relevant period.  The ALJ also considered Workers'

5   Compensation reports that summarized plaintiff's medical

6   history, including surgeries that predated the alleged

7   disability onset date.  The ALJ also cited a treatment summary

8   by a neurosurgical specialist who evaluated plaintiff in

9   May 2003 and described plaintiff as doing "quite well" after a

10  course of physical therapy for lower back pain.

11          Plaintiff challenges the state agency consultant's

12  conclusion regarding the sufficiency of the medical evidence and

13  speculates that the physicians did not review the entire record

14  before issuing their separate opinions.  This argument is

15  unpersuasive for several reasons.  First, the consultants cited

16  the records that they reviewed before determining that

17  plaintiff's application did not support a disability claim.

18  Second, there is general recognition that state agency

19  consultants are "highly qualified and experts in Social Security

20  Disability evaluation," and the ALJ could have relied on some or

21  all of their opinions if supported by substantial evidence.

22  Finally, the consultants' opinions had minimal impact on the RFC

23  determination, because the ALJ did not rely on them to establish

24  any functional limitations.

25          Plaintiff's contention that the ALJ improperly

1  discounted his testimony regarding the functional limitations

2  imposed by his back, shoulder, and knee pain is likewise

3  unpersuasive.  Subjective complaints alone are not a basis for

4  an award of disability insurance benefits in the absence of

5  corroborating objective medical evidence.  Here, the ALJ

6  appropriately compared plaintiff's description of his ongoing

7  functional limitations with medical reports from the relevant

8  period showing improvement with conservative treatment such as

9  pain medication and physical therapy.

10        In challenging the ALJ's determination that plaintiff

11  was capable of performing some light work jobs, plaintiff points

12  to treatment notes and imaging reports cataloguing his diagnosed

13  impairments.  Mere diagnosis, however, does not establish the

14  functional limitations imposed by those impairments.  To the

15  extent that plaintiff argues that the ALJ should have

16  interpreted the medical and testimonial evidence differently,

17  such challenges must likewise be rejected, because they are

18  premised entirely upon a disagreement over how the ALJ resolved

19  arguably conflicting evidence.  It is not sufficient that

20  reasonable parties could interpret the evidence differently, and

21  it is not the function of this reviewing court to reweigh the

22  evidence.

23        Accordingly, this Court finds that the ALJ's RFC

24  determination was supported by substantial evidence.

25        The Court now turns to the step four analysis

1    conducted by the ALJ.  At step four, the ALJ must determine

2    whether an individual can perform their past relevant work.

3    Past relevant work can be either the specific job as plaintiff

4    actually performed it or the same kind of work as it is

5    generally performed throughout the economy.  To answer this

6    inquiry, an ALJ may engage a vocational expert to opine on the

7    jobs that a hypothetical person of the claimant's age,

8    education, and RFC could perform in the national economy.

9    Because this Court has found the ALJ's RFC determination was

10   supported by substantial evidence, it also finds the ALJ's

11   matching hypothetical of the vocational expert was proper.

12           Here, the vocational expert categorized plaintiff's

13   prior work into two job roles.  First, restaurant chef -- and I

14   should say, the two job roles are restaurant chef and restaurant

15   manager.  The vocational expert testified that someone of

16   plaintiff's age, education, and RFC would not be able to meet

17   the physical requirements of the restaurant chef position, but

18   could still meet the work requirements of restaurant manager, as

19   that job is generally performed in the national economy.  Thus,

20   the ALJ reasonably concluded that plaintiff was not disabled

21   during the relevant period.

22           The Court now turns to the step five analysis

23   conducted by the ALJ.  Having found that plaintiff could meet

24   the job requirements of restaurant manager, the ALJ could have

25   ended his inquiry there.  Instead, the ALJ, again relied on

1    vocational expert testimony to reach an alternative finding at

2    step five that there were other jobs in the national economy

3    that an individual with plaintiff's RFC could perform during the

4    relevant period.

5         The vocational expert identified three representative

6    occupations that plaintiff could perform.  Those three are order

7    clerk, document preparer, and surveillance system monitor.  The

8    ALJ then appropriately questioned the vocational expert

9    regarding the basis for that opinion and sought explanation

10   where his opinion relied on his professional expertise rather

11   than the standard definitions in the Dictionary of Occupational

12   Titles.

13        Numerous courts have questioned whether technological

14   advances make the positions of document preparer and

15   surveillance system monitor obsolete in the modern economy,

16   which would include the period between December 2002 and

17   December of 2007.  With regard to the document preparer

18   position, the vocational expert testified that the physical

19   requirements of the position also corresponded to jobs that

20   require working with modern technology such as high-speed

21   document scanning.  This Court need not resolve that issue to

22   find that the ALJ's step five determination was supported by

23   substantial evidence, because the vocational expert also

24   testified -- excuse me, the vocational expert also identified

25   the position of order clerk, with approximately 13,000 full-time

1    positions available nationally, as a job existing in significant

2    numbers in the national economy.  Courts have regularly held

3    that where a vocational expert identifies at least one job

4    existing in significant numbers, that the Commissioner's

5    obligation at step five is satisfied.

6           Therefore, to the extent it is necessary, this Court

7    also finds the vocational expert's testimony provided

8    substantial evidence for the ALJ to determine that there were

9    jobs existing in significant numbers in the national economy

10   that plaintiff could perform.  Accordingly, the ALJ's step five

11   determination does not present any grounds for remand.

12          Based on the foregoing, the ALJ's decision was based

13   upon correct legal standards, and substantial evidence supports

14   his ultimate determination that plaintiff was not under a

15   disability through the date of his decision.

16          As a result, this Court therefore finds and concludes

17   that defendant's motion for judgment on the pleadings is

18   granted, plaintiff's complaint is dismissed, and the

19   Commissioner's decision denying plaintiff benefits is affirmed.

20   This concludes the Court's decision, analysis, and reasoning.

21          (Time noted:  10:07 a.m.)

22

23

24

25

```
1

2

3

4                    CERTIFICATE OF OFFICIAL REPORTER

5

6

7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

8    NYRCR, Official U.S. Court Reporter, in and for the United

9    States District Court for the Northern District of New York, DO

10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11   States Code, that the foregoing is a true and correct transcript

12   of the stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17            Dated this 6th day of September, 2024.

18

19            s/ Hannah F. Cavanaugh_____

20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21            Official U.S. Court Reporter

22

23

24

25
```